UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RENTOKIL NORTH AMERICA, INC.,
a Pennsylvania corporation,

      Plaintiff,

v.                                Case No. _____

CERTUS PEST, INC., a Delaware
corporation, DAVID S. BRADFORD,
DAWN HAMMOND, CINTYA
ZAMORA-AVERY, RODNEY
RITTER, CATHERINE E. HOUSE,
SAN JUAN ESQUIVEL, ARCADIO
RICARDO YABUT III, ROBERT
CLARK HALL, and JOHN JUDGE,

      Defendants.
_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, Rentokil North America, Inc. ("Rentokil" or "Plaintiff"), hereby sues corporate defendant Certus Pest, Inc. ("Certus"), and the individual defendants David S. Bradford ("Bradford"), Dawn Hammond ("Hammond"), Cintya Zamora-Avery ("Zamora-Avery"), Rodney Ritter ("Ritter"), Catherine E. House ("House"), San Juan Esquivel ("Esquivel"), Arcadio Ricardo Yabut III ("Yabut"), Robert Clark Hall ("Hall"), and John Judge ("Judge") (collectively the "Individual Defendants"), and states:

## Parties, Jurisdiction and Venue

1.      Rentokil is a Pennsylvania corporation, with its principal place of business in Pennsylvania.

2.      Rentokil offers commercial and residential pest control services along with other commercial services across the United States, including Hillsborough and Sarasota Counties, Florida.

3.      As part of its growth strategy, Rentokil also acquires pest control related businesses throughout the United States, including in Florida and the Southeast.

4.      Certus is a Delaware corporation, with its principal place of business in Connecticut, that transacts business in Hillsborough and Sarasota Counties, Florida.

5.      Certus a direct competitor of Rentokil in the pest control business.  In addition, Certus is one of several strategic competitors who, like Rentokil, acquire pest related businesses across the country; Certus has a primary focus on acquisitions in the Southeast and Florida.

6.      Individual Defendants are permanent residents of Hillsborough and Sarasota Counties, Florida and the surrounding areas, except for Hall who, upon information and belief, works remotely from Georgia.

2

7.     This is an action for temporary and permanent injunctive relief and for damages in excess of $75,000.00, exclusive of interest, costs and attorneys' fees.

8.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as Plaintiff has different citizenship from all Defendants.

9.     Venue is proper in the Middle District of Florida, Tampa Division, where the causes of action accrued, the Defendants reside, and pursuant to certain venue selection clauses.

## General Allegations

10.     On or around November 9, 2020, Bradford entered a Non-Solicitation, Non-Competition, and Confidentiality Agreement ("Bradford Restrictive Covenants") with Environmental Pest Service Management Company, LLC ("EPS") stating generally that he would not compete or solicit employees or customers for one year after leaving EPS.  The Bradford Restrictive Covenants state they are expressly assignable to a new entity.  A true and correct copy of the Bradford Restrictive Covenants is attached hereto as Exhibit "A."

11.     On or around January 1, 2021, Rentokil acquired EPS in a stock transfer, paying Bradford a substantial sum at closing and, as part of the transaction, the Bradford Restrictive Covenants were assigned from EPS to Rentokil.

3

12.     Bradford had been an owner and Chief Financial Officer of EPS and in that position, he was exposed to all of the confidential information of EPS.

13.     EPS had transacted business through a number of regionally known pest related companies, such as Arrow Environmental Services, LLC, Bug Out Services, LLC, Skyline Pest Solutions, LLC, and State Pest Control, LLC, which are now under the leadership and ownership of Rentokil.

14.     On or around May 28, 2021, Bradford left Rentokil to become Chief Financial Officer of Certus, a direct competitor of Rentokil, in flagrant violation of the Bradford Restrictive Covenants.

15.     On or around September 22, 2021, Rentokil, Certus and Bradford entered into a letter agreement to avoid litigation and to clarify the rights of the parties going forward ("Letter Agreement").  The Letter Agreement generally allowed Bradford to work for Certus under certain restrictions.  A true and correct copy of the Letter Agreement is attached hereto as Exhibit "B."

16.     In paragraph 3 of the Letter Agreement, the parties agreed Rentokil was not waiving its right to enforce the Bradford Restrictive Covenants in the future.

17.     In paragraph 4 of the Letter Agreement, Bradford was specifically required to continue to comply with the terms of the customer and employee non-solicitation provisions in the Bradford Restrictive Covenants, which were to

O3882036.v3

remain in effect for one year after his May 28, 2021 date of separation from Rentokil.

18.   Pursuant to paragraph 5 of the Letter Agreement, if Certus or Bradford violates the Bradford Restrictive Covenants or the Letter Agreement, the non-competition and non-solicitation periods are tolled by a violation; they are to be extended to run from the date of the misconduct, by an amount of time equal to the remaining time period of the restriction at the time of the misconduct.

19.   On or around March 18, 2022, Certus hired away Barrett, who was Rentokil's Talent Acquisition Recruiter for the Southeast Territory, in flagrant violation of the Bradford Restrictive Covenants and the Letter Agreement.  A true and correct copy of Barrett's LinkedIn profile showing he joined Certus in March 2022 is attached hereto as Exhibit "C."  However, upon information and belief, he has since left Certus.

20.   On or around June 23, 2022, Certus hired away Zamora-Avery, who was Rentokil's Senior Financial Analyst for the Southeast Region.  Zamora-Avery was bound by her own restrictive covenants pursuant to her Non-Competition and Confidentiality Agreement ("Zamora-Avery Restrictive Covenants"). Zamora-Avery's employment with Certus violates both the Bradford Restrictive Covenants and the Zamora-Avery Restrictive Covenants.  A true and correct copy of Zamora-Avery's LinkedIn Profile showing her as an Accounting Manager with Certus,

along with the Zamora-Avery Restrictive Covenants, are attached hereto as Composite Exhibit "D."

21.     On or around June 30, 2022, Certus hired away Hammond, who was a Rentokil Director of Human Resources.   Hammond was bound by her own restrictive covenants pursuant to her Non-Solicitation, Non-Competition, and Confidentiality Agreement ("Hammond Restrictive Covenants").  Her employment with Certus violates both the Bradford Restrictive Covenants and the Hammond Restrictive Covenants.  A true and correct copy of Hammond's LinkedIn profile showing her as Chief Human Resources Officer for Certus, along with the Hammond Restrictive Covenants, are attached hereto as Composite Exhibit "E."

22.     In August 2022, Certus hired away Judge, who was a Rentokil operations professional, in violation of the Bradford Restrictive Covenants.  A true and correct copy of Judge's LinkedIn profile showing him as Senior Director of Field Operations for Certus, is attached hereto as Exhibit "F."

23.     On or around August 8, 2022, Certus hired away Esquivel, who was a Rentokil outside sales professional.  Esquivel was bound by his own restrictive covenants pursuant to his Non-Competition and Confidentiality Agreement ("Esquivel Restrictive Covenants"). His employment with Certus violates both the Bradford Restrictive Covenants and the Esquivel Restrictive Covenants.  A true

O3882036.v3

and correct copy of Esquivel's LinkedIn profile, along with the Esquivel Restrictive Covenants, are attached hereto as <u>Composite Exhibit "G."</u>

24.    On or around August 11, 2022, Certus hired away House, who was a Rentokil Integration Management Office manager.  House was bound by her own restrictive covenants pursuant to her Non-Competition and Confidentiality Agreement ("House Restrictive Covenants").  House's employment with Certus violates both the Bradford Restrictive Covenants and the House Restrictive Covenants.  A true and correct copy of House's LinkedIn profile, along with the House Restrictive Covenants, are attached hereto as <u>Composite Exhibit "H."</u>

25.    On or around August 29, 2022, Certus hired away Yabut, who was a Rentokil outside sales professional.  Yabut was bound by his own restrictive covenants pursuant to his Non-Solicitation and Non-Disclosure Agreement ("Yabut Restrictive Covenants").  Yabut's employment with Certus violates both the Bradford Restrictive Covenants and the Yabut Restrictive Covenants.  A true and correct copy of Yabut's LinkedIn profile, followed by the Yabut Restrictive Covenants, are attached hereto as <u>Composite Exhibit "I."</u>

26.    On or around September 24, 2022, Certus hired away Hall, who was a Rentokil technical training coordinator.  Hall was bound by his own restrictive covenants pursuant to his Confidentiality and Non-Competition Agreement ("Hall Restrictive Covenants").  Hall's employment by Certus violates both the Bradford

Restrictive Covenants and the Hall Restrictive Covenants.  A true and correct copy of Hall's LinkedIn profile, along with the Hall Restrictive Covenants, are attached hereto as <u>Composite Exhibit "J.</u>"

27.     On or around September 29, 2022, Certus hired away Rodney Ritter, who was a Rentokil District Manager.  Ritter was bound by his own restrictive covenants pursuant to his Non-Solicitation, Non-Competition and Confidentiality Agreement ("Ritter Restrictive Covenants").  Ritter's employment with Certus violates both the Bradford Restrictive Covenants and the Ritter Restrictive Covenants.  A true and correct copy of the Ritter LinkedIn profile, along with the Ritter Restrictive Covenants, are attached hereto as <u>Composite Exhibit "K.</u>"

28.     Certus has systematically hired key employees of Rentokil, who were previously employed with EPS and its affiliated pest control businesses, in an effort to undermine Rentokil, a competitor, and grow Certus without regard to the Individual Defendants' restrictions and the Bradford Restrictive Covenants.  The various restrictive covenants of the Individual Defendants include requirements to keep confidential information private, such as financial, marketing and sales information, not to compete against their employer for a period of time, and not to solicit away employees, customers or business associates from their employer.

29.     All conditions precedent to the relief requested herein have been performed, have occurred or have been waived.

30.    Plaintiff has retained the law firm of Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., agreeing to pay a reasonable fee for legal services rendered.   Plaintiff is entitled to recover its attorneys' fees and costs pursuant to both contract and statute.

<u>COUNT I</u>
**Temporary and Permanent Injunctive Relief**

31.    Plaintiff re-alleges and incorporates herein paragraphs 1-30 above.

32.    Certus entered into the Letter Agreement with Rentokil and Bradford, agreeing to honor the Bradford Restrictive Covenants.  It then hired Barrett within the restricted period and proceeded to hire away several key employees who were also subject to their own restrictive covenants while the Bradford Restrictive Covenants were subject to tolling.

33.    Certus had actual knowledge at the time of hiring the Individual Defendants that they were subject to restrictive covenants, particularly after hiring Bradford from Rentokil on or around May 28, 2021, as well as Hammond who was a Director of Human Resources, on or around June 30, 2022.

34.    Plaintiff has a substantial likelihood of success on the merits because the restrictive covenants were properly acquired by Rentokil and were an important protective measure to preserve the benefit of the bargain in the acquisition of EPS. Certus specifically agreed to honor the Bradford Restrictive Covenants pursuant to the Letter Agreement.

35.     Plaintiff has no adequate remedy at law because money damages may be difficult to calculate and are insufficient to remedy the harm suffered by Plaintiff, including, but not limited to, loss of existing and future business, key employees, customer information, specific and prospective sales leads, manpower, and customer goodwill, along with disclosure of confidential information to a competitor, expenses associated with hiring and training new employees, and injury to business and reputation.

36.     There is a likelihood of irreparable harm absent the injunction, as presumed under section 542.335(1)(j), Florida Statutes, because if Certus continues to illegally poach from Rentokil, the entire operations in Hillsborough and Sarasota Counties could be at risk and the substantial payments made to acquire EPS – some of which went to Bradford – would be wasted.

37.     Injunctive relief serves the public interest in that it enforces valid agreements and protects the benefit of Rentokil's bargain in the EPS transaction.

WHEREFORE, Plaintiff, Rentokil North America, Inc., demands temporary and permanent injunctive relief, enjoining Defendant, Certus Pest, Inc., from further raiding employees of Rentokil and to immediately terminate the employment of all former Rentokil employees until the passage of all restricted periods, including tolling, and to otherwise honor the restrictive covenants, along with an award of damages until the wrongful acts cease or are enjoined, plus

10

punitive damages, attorneys' fees, interest, costs, and such further relief as deemed just and proper.

## COUNT II
### Tortious Interference with a Contractual Right

38.     Plaintiff re-alleges and incorporates herein paragraphs 1-30 above.

39.     Certus knew about the restrictive covenants between Plaintiff and the Individual Defendants when hiring those Individual Defendants who were subject to restrictive covenants.

40.     Certus intentionally attempted to procure the breach of those contracts by hiring the Individual Defendants in violation of their own respective restrictive covenants.

41.     Through its wrongful acts, Certus tortiously interfered with Plaintiff's contractual rights without privilege or justification.

42.     Certus's wrongful acts were intentional and wanton.

43.     As a direct and proximate result of such acts, Plaintiff has suffered, and continues to suffer, irreparable harm.

44.     Plaintiff has no adequate remedy at law because money damages may be difficult to calculate and are insufficient to remedy the harm suffered by Plaintiff, including, but not limited to, loss of existing and future business, key employees, customer information, specific and prospective sales leads, manpower, and customer goodwill, along with disclosure of confidential information to a

O3882036.v3

competitor, expenses associated with hiring and training new employees, and injury to business and reputation.

45.   Plaintiff has a substantial likelihood of success on the merits, and a temporary injunction will serve the public interest.

46.   As a direct and proximate result of these wrongful acts, Plaintiff has suffered, and will continue to suffer, damages until the wrongful acts cease or are enjoined.

WHEREFORE, Plaintiff, Rentokil North America, Inc., demands temporary and permanent injunctive relief, enjoining Defendant, Certus Pest, Inc., from further raiding employees of Rentokil and to immediately terminate the employment of all former Rentokil employees until the passage of all restricted periods, including tolling, and to otherwise honor the restrictive covenants, along with an award of damages until the wrongful acts cease or are enjoined, plus punitive damages, attorneys' fees, interest, costs, and such further relief as deemed just and proper.

## COUNT III
**Breach of Bradford Restrictive Covenants and Letter Agreement**

47.   Plaintiff re-alleges and incorporates herein paragraphs 1-30 above.

48.   The Bradford Restrictive Covenants and Letter Agreement constitute valid contracts, and Plaintiff fully performed under the contracts.

49.   Bradford breached the Bradford Restrictive Covenants and Letter

12

O3882036.v3

Agreement as set forth above.

50.    As a direct and proximate result of his breaches, Plaintiff has suffered, and continues to suffer, irreparable harm as presumed under section 542.335(1)(j), Florida Statutes.

51.    Based upon the information, training and materials provided to Bradford, and the protection of its customer and employee relationships, Plaintiff has a legitimate business interest as described in section 542.335, Florida Statutes, justifying the Bradford Restrictive Covenants.  Bradford was an owner of EPS when it sold to Rentokil, was well as the Chief Financial Officer.

52.    Plaintiff has no adequate remedy at law because money damages may be difficult to calculate and are insufficient to remedy the harm suffered by Plaintiff, including, but not limited to, loss of existing and future business, key employees, customer information, specific and prospective sales leads, manpower, and customer goodwill, along with disclosure of confidential information to a competitor, expenses associated with hiring and training new employees, and injury to business and reputation.

53.    There is a likelihood of irreparable harm absent the injunction, as presumed under section 542.335(1)(j), Florida Statutes, because if Certus continues to illegally poach from Rentokil, the entire operations in Hillsborough and Sarasota Counties could be at risk and the substantial payments made to acquire EPS –

O3882036.v3

some of which went to Bradford – would be wasted.

54.   Plaintiff is entitled to injunctive relief, as agreed by Bradford in the Bradford Restrictive Covenants.

55.   Plaintiff has a substantial likelihood of success on the merits, and a temporary injunction will serve the public interest.

56.   Plaintiff is entitled to the recovery of its attorneys' fees and costs under the Bradford Restrictive Covenants and/or section 542.335(1)(k), Florida Statutes.

WHEREFORE, Plaintiff, Rentokil North America, Inc., respectfully requests that this Court grant temporary and permanent injunctive relief, prohibiting the individual defendant, David S. Bradford, from continuing employment with Certus in violation of the Bradford Restrictive Covenants and Letter Agreement until the passage of all restricted periods, including tolling, and to otherwise honor the restrictive covenants, along with an award of damages, and to enter an award of attorneys' fees, interest, costs, and such other relief as deemed just and appropriate.

## COUNT IV
### Tortious Interference with Advantageous Business Relationships

57.   Plaintiff re-alleges and incorporates herein paragraphs 1-30 above.

58.   Certus and the Individual Defendants knew of Plaintiff's advantageous business relationships with its customers, vendors, and other

14

O3882036.v3

business associates as defined in the restrictive covenants.

59.     Upon information and belief, Certus and Individual Defendants have intentionally and tortiously interfered with such advantageous business relationships by utilizing them on behalf of Certus, a direct competitor, without privilege or justification.

60.     Defendants' wrongful acts were intentional and wanton.

61.     As a direct and proximate result of such acts, Plaintiff has suffered, and continues to suffer, irreparable harm.

62.     Money damages are insufficient to remedy the harm suffered by Plaintiff, which includes, but is not limited to, loss of manpower, business, customer information, specific and prospective sales leads, customer goodwill, and injury to business and reputation.

63.     Plaintiff has no adequate remedy at law and is entitled to injunctive relief.

64.     Plaintiff has a substantial likelihood of success on the merits, and a temporary injunction will serve the public interest.

65.     As a direct and proximate result of these wrongful acts, Plaintiff has suffered, and will continue to suffer, damages until the wrongful acts cease or are enjoined.

O3882036.v3

WHEREFORE, Plaintiff, Rentokil North America, Inc., respectfully requests that this Court grant temporary and permanent injunctive relief, enjoining corporate defendant, Certus Pest, Inc., and all the Individual Defendants from interfering with Plaintiff's advantageous business relationships, and award damages in favor of Plaintiff which are incurred through the date that the wrongful acts cease or are enjoined, along with punitive damages, interest and costs, and such further relief as deemed just and proper.

<u>**COUNT V**</u>
**Breach of Hammond Restrictive Covenants**

66.     Plaintiff re-alleges and incorporates herein paragraphs 1-30 above.

67.     The Hammond Restrictive Covenants constitute a valid contract, and Plaintiff fully performed under the contract.

68.     Hammond breached the Bradford Restrictive Covenants as set forth above.

69.     As a direct and proximate result of her breaches, Plaintiff has suffered, and continues to suffer, irreparable harm as presumed under section 542.335(1)(j), Florida Statutes.

70.     Based upon the information, training and materials provided to Hammond, and the protection of its customer and employee relationships, Plaintiff has a legitimate business interest as described in section 542.335, Florida Statutes, justifying the Hammond Restrictive Covenants.  Hammond is an experienced

16

senior human resource professional with private equity experience, who plans and implements programs that align employee development and productivity with company goals.

71.    Money damages are insufficient to remedy the harm caused by Hammond, which includes, but is not limited to, loss of customer information, loss of goodwill, injury to business and reputation, and the potential or actual disclosure of confidential information to a competitor.

72.    Plaintiff has no adequate remedy at law and is entitled to injunctive relief, as agreed by Hammond in the Hammond Restrictive Covenants.

73.    Plaintiff has a substantial likelihood of success on the merits, and a temporary injunction will serve the public interest.

74.    Plaintiff is entitled to the recovery of its attorneys' fees and costs under the Hammond Restrictive Covenants and/or section 542.335(1)(k), Florida Statutes.

WHEREFORE, Plaintiff, Rentokil North America, Inc., respectfully requests that this Court grant temporary and permanent injunctive relief, prohibiting the individual defendant, Dawn Hammond, from continuing employment with Certus in violation of the Hammond Restrictive Covenants, along with an award of damages, and to enter an award of attorneys' fees, interest and costs, as well as such other relief as deemed just and appropriate.

O3882036.v3

**COUNT VI**
**Breach of Zamora-Avery Restrictive Covenants**

75.    Plaintiff re-alleges and incorporates herein paragraphs 1-30 above.

76.    The Zamora-Avery Restrictive Covenants constitute a valid contract, and Plaintiff fully performed under the contract.

77.    Zamora-Avery breached the Zamora-Avery Restrictive Covenants as set forth above.

78.    As a direct and proximate result of her breaches, Plaintiff has suffered, and continues to suffer, irreparable harm as presumed under section 542.335(1)(j), Florida Statutes.

79.    Based upon the information, training and materials provided to Zamora-Avery, and the protection of its customer and employee relationships, Plaintiff has a legitimate business interest as described in section 542.335, Florida Statutes, justifying the Zamora-Avery Restrictive Covenants. Zamora-Avery reported to the corporate finance department and has extensive knowledge of Rentokil's financial books and records as the Senior Financial Analyst for the Southeast Region.  She had been promoted from financial analyst to staff accountant, to senior accountant over a period of almost 8 years, and is now the Accounting Manager at Certus.

80.    Money damages are insufficient to remedy the harm caused by Zamora-Avery, which includes, but is not limited to, loss of customer information,

18

loss of goodwill, injury to business and reputation, and the potential or actual disclosure of confidential information to a competitor.

81.   Plaintiff has no adequate remedy at law and is entitled to injunctive relief, as agreed by Zamora-Avery in the Zamora-Avery Restrictive Covenants.

82.   Plaintiff has a substantial likelihood of success on the merits, and a temporary injunction will serve the public interest.

83.   Plaintiff is entitled to the recovery of its attorneys' fees and costs under the Zamora-Avery Restrictive Covenants and/or section 542.335(1)(k), Florida Statutes.

WHEREFORE, Plaintiff, Rentokil North America, Inc., respectfully requests that this Court grant temporary and permanent injunctive relief, prohibiting the individual defendant, Cintya Zamora-Avery, from continuing employment with Certus in violation of the Zamora-Avery Restrictive Covenants, along with an award of damages, and to enter an award of attorneys' fees, interest and costs, as well as such other relief as deemed just and appropriate.

## COUNT VII
### Breach of House Restrictive Covenants

84.   Plaintiff re-alleges and incorporates herein paragraphs 1-30 above.

85.   The House Restrictive Covenants constitute a valid contract, and Plaintiff fully performed under the contract.

86.   House breached the House Restrictive Covenants as set forth above.

19

O3882036.v3

87.    As a direct and proximate result of her breaches, Plaintiff has suffered, and continues to suffer, irreparable harm as presumed under section 542.335(1)(j), Florida Statutes.

88.    Based upon the information, training and materials provided to House, and the protection of its customer and employee relationships, Plaintiff has a legitimate business interest as described in section 542.335, Florida Statutes, justifying the House Restrictive Covenants. House was an Integration Management Office manager, who oversaw integration processes, including functional work plan reviews, cross-functional collaboration, and executive status updates.

89.    Money damages are insufficient to remedy the harm caused by House, which includes, but is not limited to, loss of customer information, loss of goodwill, injury to business and reputation, and the potential or actual disclosure of confidential information to a competitor.

90.    Plaintiff has no adequate remedy at law and is entitled to injunctive relief, as agreed by House in the House Restrictive Covenants.

91.    Plaintiff has a substantial likelihood of success on the merits, and a temporary injunction will serve the public interest.

92.    Plaintiff is entitled to the recovery of its attorneys' fees and costs under the House Restrictive Covenants and/or section 542.335(1)(k), Florida Statutes.

O3882036.v3

WHEREFORE, Plaintiff, Rentokil North America, Inc., respectfully requests that this Court grant temporary and permanent injunctive relief, prohibiting the individual defendant, Catherine E. House, from continuing employment with Certus in violation of the House Restrictive Covenants, along with an award of damages, and to enter an award of attorneys' fees, interest and costs, as well as such other relief as deemed just and appropriate.

## COUNT XIII
### Breach of Esquivel Restrictive Covenants

93.    Plaintiff re-alleges and incorporates herein paragraphs 1-30 above.

94.    The Esquivel Restrictive Covenants constitute a valid contract, and Plaintiff fully performed under the contract.

95.    Esquivel breached the Esquivel Restrictive Covenants as set forth above.

96.    As a direct and proximate result of his breaches, Plaintiff has suffered, and continues to suffer, irreparable harm as presumed under section 542.335(1)(j), Florida Statutes.

97.    Based upon the information, training and materials provided to Esquivel, and the protection of its customer and employee relationships, Plaintiff has a legitimate business interest as described in section 542.335, Florida Statutes, justifying the Esquivel Restrictive Covenants.  Esquivel worked daily with current and prospective clients, performing inspections and evaluations for pest and lawn

21

solutions, and sold service solutions to customers, capturing payment information. He had access to the current customer base through an operating system including contact information, current services and prices the customers were paying for each.

98.    Money damages are insufficient to remedy the harm caused by Esquivel, which includes, but is not limited to, loss of customer information, loss of goodwill, injury to business and reputation, and the potential or actual disclosure of the confidential information to a competitor.

99.    Plaintiff has no adequate remedy at law and is entitled to injunctive relief, as agreed by Esquivel in the Esquivel Restrictive Covenants.

100.   Plaintiff has a substantial likelihood of success on the merits, and a temporary injunction will serve the public interest.

101.   Plaintiff is entitled to the recovery of its attorneys' fees and costs under the Esquivel Restrictive Covenants and/or section 542.335(1)(k), Florida Statutes.

WHEREFORE, Plaintiff, Rentokil North America, Inc., respectfully requests that this Court grant temporary and permanent injunctive relief, prohibiting the individual defendant, San Juan Esquivel, from continuing employment with Certus in violation of the Esquivel Restrictive Covenants, along with an award of damages, and to enter an award of attorneys' fees, interest and

costs, as well as such other relief as deemed just and appropriate.

## COUNT IX
## Breach of Yabut Restrictive Covenants

102.   Plaintiff re-alleges and incorporates herein paragraphs 1-30 above.

103.   The Yabut Restrictive Covenants constitute a valid contract, and Plaintiff fully performed under the contract.

104.   Yabut breached the Yabut Restrictive Covenants as set forth above.

105.   As a direct and proximate result of his breaches, Plaintiff has suffered, and continues to suffer, irreparable harm as presumed under section 542.335(1)(j), Florida Statutes.

106.   Based upon the information, training and materials provided to Yabut, and the protection of its customer and employee relationships, Plaintiff has a legitimate business interest as described in section 542.335, Florida Statutes, justifying the Yabut Restrictive Covenants.   Yabut worked daily with current and prospective clients, performing inspections and evaluations for pest and lawn solutions, and sold service solutions to customers, capturing payment information. He had access to the current customer base through an operating system including contact information, current services and prices the customers were paying for each.

107.   Money damages are insufficient to remedy the harm caused by Yabut, which includes, but is not limited to, loss of customer information, loss of

23

goodwill, injury to business and reputation, and the potential or actual disclosure of confidential information to a competitor.

108.   Plaintiff has no adequate remedy at law and is entitled to injunctive relief, as agreed by Yabut in the Yabut Restrictive Covenants.

109.   Plaintiff has a substantial likelihood of success on the merits, and a temporary injunction will serve the public interest.

110.   Plaintiff is entitled to the recovery of its attorneys' fees and costs under the Yabut Restrictive Covenants and/or section 542.335(1)(k), Florida Statutes.

WHEREFORE, Plaintiff, Rentokil North America, Inc., respectfully requests that this Court grant temporary and permanent injunctive relief, prohibiting the individual defendant, Arcadio Ricardo Yabut III, from continuing employment with Certus in violation of the Yabut Restrictive Covenants, along with an award of damages, and to enter an award of attorneys' fees, interest and costs, as well as such other relief as deemed just and appropriate.

## <u>COUNT X</u>
### Breach of Hall Restrictive Covenants

111.   Plaintiff re-alleges and incorporates herein paragraphs 1-30 above.

112.   The Hall Restrictive Covenants constitute a valid contract, and Plaintiff fully performed under the contract.

113.   Hall breached the Hall Restrictive Covenants as set forth above.

O3882036.v3

114.    As a direct and proximate result of his breaches, Plaintiff has suffered, and continues to suffer, irreparable harm as presumed under section 542.335(1)(j), Florida Statutes.

115.    Based upon the information, training and materials provided to Hall, and the protection of its customer and employee relationships, Plaintiff has a legitimate business interest as described in section 542.335, Florida Statutes, justifying the Hall Restrictive Covenants.  Hall was a training coordinator for Rentokil and was previously a branch manager.

116.    Money damages are insufficient to remedy the harm caused by Hall, which includes, but is not limited to, loss of customer information, loss of goodwill, injury to business and reputation, and the potential or actual disclosure of confidential information to a competitor.

117.    Plaintiff has no adequate remedy at law and is entitled to injunctive relief, as agreed by Hall in the Hall Restrictive Covenants.

118.    Plaintiff has a substantial likelihood of success on the merits, and a temporary injunction will serve the public interest.

119.    Plaintiff is entitled to the recovery of its attorneys' fees and costs under the Hall Restrictive Covenants and/or section 542.335(1)(k), Florida Statutes.

O3882036.v3

WHEREFORE, Plaintiff, Rentokil North America, Inc., respectfully requests that this Court grant temporary and permanent injunctive relief, prohibiting the individual defendant, Robert Clark Hall, from continuing employment with Certus in violation of the Hall Restrictive Covenants, along with an award of damages, and to enter an award of attorneys' fees, interest and costs, as well as such other relief as deemed just and appropriate.

Dated:  October 7, 2022

/s/ *David P. Hathaway*
NICHOLE M. MOONEY
Florida Bar No. 57908
DAVID P. HATHAWAY
Florida Bar No. 491411
Dean, Mead, Egerton, Bloodworth,
   Capouano & Bozarth, P.A.
P.O. Box 2346
Orlando, Florida 32802-2346
Phone: (407) 841-1200
Fax: (407) 423-1831
Primary Email:
   nmooney@deanmead.com
   dhathaway@deanmead.com
Secondary Email:
   kgazboda@deanmead.com
   smarshall@deanmead.com
Attorneys for Plaintiff

O3882036.v3